Filed 12/19/13  P. v. Newell CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL NEWELL,<br><br>    Defendant and Appellant. | 2d Crim. No. B242664<br>(Super. Ct. No. BA379987-01)<br>(Los Angeles County) |

Michael Newell appeals a judgment following conviction of second degree robbery, and assault by means likely to produce great bodily injury, with findings that he personally inflicted great bodily injury upon his victim, suffered five prior strike convictions, suffered four prior serious felony convictions, and served one prior prison term.  (Pen. Code, §§ 211, 245, subd. (a)(1), 12022.7, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667, subd. (a), 667.5, subd. (b).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Danny Donatto was employed as a cashier at Frank's Liquor store located on Western Avenue in Los Angeles.  During his longtime employment there, Donatto became familiar with liquor store customers, including Newell.  Donatto described

---

[1] All further statutory references are to the Penal Code unless otherwise stated. References to section 12022.7 are to the version in effect prior to January 1, 2012.

Newell, known as "C-Mike," as "friendly" and "a good customer." Newell visited the liquor store daily and "chitchat[ed]" with Donatto.

During the mid-morning of December 20, 2010, Donatto was stocking the liquor cooler when he noticed Newell and another customer, "Sunshine," conversing outside the store. Sunshine looked through the window at Donatto, dropped his head, and walked away.

Donatto then saw Newell pull a black beanie over his face and "burst[]" into the liquor store carrying a firearm in his left hand. Donatto quickly moved toward a bulletproof glass portion of the counter. As Donatto approached the counter, Newell caught up with him and tried to "hop over" the counter. When Newell jumped, Donatto knocked Newell's feet out from under him, but Newell landed on his feet. Donatto repeated the maneuver, but "missed." Newell's "momentum" continued forward, however, and the firearm went into Donatto's left eye. Donatto fell to the floor in pain, unable to see with his injured eye.

Newell walked over Donatto, turned off the store lighting, and attempted to open the cash register. He called Donatto "a punk-ass bitch," and asked him to open the register. When Donatto raised himself from the floor, Newell ordered him to stay down. Newell remained by the register for several minutes and then left the store.

Donatto arose from the floor, locked the front door, and telephoned the store owner, Seife Kidane. Kidane arrived shortly thereafter and found Donatto sitting on the floor, bleeding from his eye. Kidane inspected the store and found that the locked cabinet below the cash register had been pried open with a screwdriver and $2,800 was missing. A screwdriver lay near the cabinet.

Kidane drove Donatto to the hospital. Despite immediate surgery, Donatto is now blind in his left eye.

The day following the robbery, Kidane reviewed a surveillance video depicting a man of Newell's build entering the liquor store at approximately 9:50 a.m. on December 20, 2010. The man wore an unusual jacket that Kidane had seen Newell wear three or four times previously. Kidane saw the man "punch" Donatto in his left eye with

2

an overhead punching motion. Due to the poor quality of the video, Kidane did not see a firearm or weapon. The locked cabinet where Kidane kept the store receipts was out of range of the store's surveillance camera. Los Angeles police officers were unable to view and retrieve the surveillance video because it was overwritten by later recordings.

The jury convicted Newell of second degree robbery (count 1), and assault by means likely to produce great bodily injury (count 2), and found that he personally inflicted great bodily injury upon his victim. (§§ 211, 245, subd. (a)(1), 12022.7, subd. (a).) In a separate proceeding, the trial court found that Newell suffered five prior strike convictions and four prior serious felony convictions, and served one prior prison term. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667, subd. (a), 667.5, subd. (b).)

The trial court sentenced Newell to a prison term of 49 years to life, consisting of 25 years to life for count 1, three years for the great bodily injury enhancement, 20 years for the four serious felony enhancements pursuant to section 667, subdivision (a), and one year for the prior prison term. Pursuant to section 654, it imposed but stayed a concurrent 25-year-to-life sentence for count 2. The court also imposed a $240 restitution fine, a $240 parole revocation restitution fine (stayed), an $80 court security assessment, and a $60 criminal conviction assessment, ordered victim restitution, and awarded Newell 651 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Newell appeals and contends that: 1) he received the ineffective assistance of counsel because his attorney failed to request instructions regarding *accidental* infliction of harm to the victim, and 2) imposition of the restitution fines impairs federal and state constitutional commands against ex post facto laws.

*DISCUSSION*

*I.*

Newell argues that he did not receive the effective assistance of counsel because his attorney did not request a pinpoint "accident instruction" regarding the great bodily injury allegation. (CALCRIM No. 3404 ["The defendant is not guilty of [the charged crime] if (he/she) acted [or failed to act] without the intent required for that

3

crime, but acted instead accidentally. . . ."].)  He asserts that his attorney's omission precluded the jury from considering the issue of accident, in violation of his federal and California constitutional rights to the effective assistance of counsel and due process of law.  (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, §§ 7, 15.)  Newell contends that it was unreasonable for counsel not to request the accident instruction as an alternative defense to his primary defense of mistaken identity.

It is well-settled that a defendant is entitled to the effective assistance of counsel by the federal and California Constitutions.  (*People v. Vines* (2011) 51 Cal.4th 830, 875.)  Defendant bears the burden of establishing the inadequacy of trial counsel.  (*Ibid.*)  To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was deficient because his representation fell below an objective standard of reasonableness under prevailing professional norms.  (*Ibid.*)  He must also show prejudice flowing from counsel's performance or lack thereof, i.e., a reasonable probability that, but for the errors, the result of the proceeding would have been different.  (*Id.* at pp. 875-876.)  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  (*Id.* at p. 876.)  Generally, a defendant's burden is difficult to carry on direct appeal.  (*Ibid*.)

Our review of counsel's performance is deferential.  (*People v. Little* (2012) 206 Cal.App.4th 1364, 1380.)  "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance."  (*People v. Mai* (2013) 57 Cal.4th 986, 1194.)

For several reasons, we reject Newell's contention.

First, counsel's decision to defend upon the basis of mistaken identity, and not accidental infliction of injury as well, is a reasonable tactical decision to which we defer.  (*People v. Mai*, *supra*, 57 Cal. 4th 986, 1194 [statement of general rule].)  Donatto's brief testimony, that Newell's "momentum [came] forward," before the firearm entered Donatto's eye, is a slender reed upon which to posit an accident defense.  Without

more evidence of "accident," counsel cannot be faulted for choosing to emphasize a mistaken identify defense and exclude an accident defense.

In any event, Newell cannot establish that he would have obtained a more favorable outcome had his attorney requested an accident instruction. (*People v. Vines*, *supra*, 51 Cal.4th 830, 876 [statement of general rule].) The great bodily injury allegation of section 12022.7 does not require a specific intent to inflict injury. (*People v. Modiri* (2006) 39 Cal.4th 481, 501, fn. 11.) The trial court instructed with CALCRIM No. 875 regarding the charged offense of assault with a deadly weapon or with force likely to produce great bodily injury. That instruction required the jury to determine that Newell: 1) used force likely to produce great bodily injury; 2) acted willfully; 3) "was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone"; and 4) had the present ability to apply force likely to produce great bodily injury. Section 12022.7 does not require any additional proof of mental state beyond that already found by the jury in determining Newell's guilt of assault with a deadly weapon or with force likely to produce great bodily injury. (*People v. Poroj* (2010) 190 Cal.App.4th 165, 168.)

*II.*

Newell contends that the trial court's imposition of a $240 restitution fine and a $240 parole revocation restitution fine (stayed) violates federal and California constitutional commands against ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; §§ 1202.4, subd. (b), 1202.45.) He relies upon the trial judge's sentencing statement that "[b]ecause there is a lot of [victim] restitution, I am going to make the restitution fine $240 [and the] parole revocation restitution fine . . . $240." Newell asserts that the trial court intended to impose only a minimum restitution fine, which in 2010 was $200, not $240.

A restitution fine pursuant to section 1202.4, subdivision (b) is mandatory unless the trial court "finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (*Ibid.*) In 2010, at the time Newell committed the present offenses, section 1202.4, subdivision (b)(1) required the court to set a restitution

fine of not less than $200. At the time of Newell's 2012 sentencing, section 1202.4, subdivision (b)(1) required the court to set a minimum restitution fine of $240. It is well settled that the imposition of restitution fines constitutes punishment that is subject to the proscriptions of the ex post facto clause and other constitutional provisions. (*People v. Souza* (2012) 54 Cal.4th 90, 143.)

Newell has forfeited this argument by not objecting in the trial court to imposition of the $240 fines. (*People v. Scott* (1994) 9 Cal.4th 331, 351.) The "unauthorized sentence" exception to the forfeiture rule does not apply because the $240 fines were lawfully imposed pursuant to the 2010 version of section 1202.4, subdivision (b)(1), authorizing a fine not "less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000)." (*Scott*, at p. 354.)

Forfeiture aside, the primary purpose of the ex post facto clause is "to prevent unforeseeable punishment." (*People v. Snook* (1997) 16 Cal.4th 1210, 1221.) An increase in the minimum punishment, as long as it remains below the previously established maximum, still leaves a range of punishment in which any sentence within its bounds was foreseeable at the time the crime was committed.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:


YEGAN, J.


PERREN, J.

6

William N. Sterling, Judge

Superior Court County of Los Angeles

_____


David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Kimberley J. Baker-Guillemet, Deputy Attorney General, for Plaintiff and Respondent.