[No. D006920. Fourth Dist., Div. One. Feb. 23, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT YANEZ NAVA, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section II A.

**COUNSEL**

Neil Auwarter, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Deborah D. Factor, Randa M. Trapp, Maxine P. Cutter and Rhonda L. Cartwright, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

BENKE, J.—Appellant Albert Nava was convicted by jury of two counts of robbery (Pen. Code,[2] § 211), one count of petty theft (§§ 484/488), one count of assault (§ 240) and one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). The jury also found true with regard to the conviction for assault appellant had inflicted great bodily injury. (§ 12022.7.) The trial court, after waiver of jury trial on the issue, found true an allegation appellant had suffered a prior felony conviction

---

[2] All statutory references are to the Penal Code unless otherwise specified.

within the meaning of sections 667, subdivision (a), and 1192.7, subdivision (c)(11). The trial court also revoked appellant's probation in an earlier case. Appellant was sentenced to a term of 13 years.

Appellant contends as to one of the charges of robbery, the trial court erred in failing sua sponte to instruct concerning the lesser included offense of assault and the trial court erred when it instructed the jury that the fracture of a bone is a significant and substantial injury within the meaning of section 12022.7. We reject the first contention and accept the second.

## I

### FACTS

A. *March 8, 1987*

On March 8, 1987, at approximately 11 in the evening, appellant approached Robert Sotelo and a group of friends as they stood on the street in front of Sotelo's house. The group was listening to music coming from Sotelo's car stereo. Appellant attempted to start a fight with men in the group but was unsuccessful. After having placed a knife at Sotelo's throat, appellant entered Sotelo's car and took the equalizer component of the vehicle's stereo system. Appellant then chased Sotelo into a nearby yard. Sotelo's father appeared and he and Sotelo chased appellant down the street. Appellant stopped, put down the equalizer, brandished his knife and stated "Come on." The Sotelos stopped. Appellant picked up the equalizer and walked away. Appellant was charged with robbery for this incident but was convicted of the lesser included offense of petty theft.

Appellant walked to the home of an acquaintance, Linda Esquibel. Appellant knocked on the door and entered without waiting for a response. Linda and a friend, Rosa Rodriguez, were in the kitchen talking. Appellant placed the equalizer he was carrying on the kitchen table and telephoned his girlfriend to pick him up. After finishing his call, appellant began to talk to Rosa, an acquaintance of appellant's. When Rosa did not respond to appellant's conversation as he believed appropriate, he began to call her names and attempted four or five times to strike her in the face. Linda called the police.

As Rosa went to comfort her crying baby, appellant grabbed her around the waist and pulled her into a bedroom. He attempted to grab Rosa's breasts and to unbutton her blouse. Rosa struggled and tried to escape. As the struggle continued, Linda's 80-year-old grandmother, who was sleeping in another bedroom, entered and struck appellant on the head with a

curtain rod and ran out. Undeterred, appellant continued to struggle with Rosa. As the police arrived, appellant struck Rosa in the face, fracturing her nose. The police met appellant in the hallway of the house and placed him under arrest.

Rosa did not seek medical attention that evening. The next day, however, because her nose was swollen and because she was having difficulty breathing, Rosa went to a hospital emergency room. A doctor determined her nose was broken and referred her to a nose specialist. The nose specialist determined Rosa's nose was broken in three places but that she had no other facial fractures or related sinus problems and had no difficulty breathing. The doctor waited several days for the swelling to subside and then reset the nose. Surgery was unnecessary and Rosa was not hospitalized. Rosa returned to the doctor's office several days later to have packings removed from her nostrils. Rosa was scheduled for an examination 10 days later but did not keep the appointment.

Appellant was charged with assault with intent to commit rape and assault by force likely to produce great bodily injury. It was also alleged appellant had inflicted great bodily injury on Rosa. Appellant was convicted of the charged assault, and the great bodily injury allegation was found true. Appellant also was found guilty of assault, a lesser included offense of assault with the intent to commit rape.

B. *March 10, 1987*

On March 10, 1987, Tod Fassler was sleeping on a mattress in a large jail cell occupied by approximately 100 inmates. At around 10:20 in the evening, Tod was awakened by appellant hitting him in the face. Another inmate kicked Tod in the stomach. Appellant demanded the black leather jacket Tod was wearing. When Tod refused to give it up, the fight continued. Finally, appellant and his accomplice were able to pull the jacket off Tod. Tod watched the men tear the jacket apart, apparently looking for something contained in it. The men also attempted to sell the jacket. After several minutes one of the other inmates saw the jacket on a bunk. The inmate picked it up and returned it to Tod. Tod stated two packs of cigarettes, some aspirin and a list of telephone numbers were missing from the jacket when he got it back.

At first Tod did not report the incident. Several minutes later, however, appellant approached Tod and took his mattress. He returned later and demanded Tod's shoes. Tod refused and sought help. Tod was taken to a hospital and treated for broken ribs, chipped teeth and a cut lip. Tod stated

he believed the jacket was taken so the men could get his cigarettes. Earlier, other inmates asked Tod for cigarettes and he told them he had none.

Another inmate in the jail that night, Steven Artadi, told a slightly different story. Steven stated Tod brought into the jail a baggie of marijuana hidden in the lining of his black leather jacket. The two rolled some of the marijuana in cigarette papers and smoked it. Steven later left to make a telephone call and when he returned, Tod was bleeding. Tod told Steven he was attacked by some inmates who took his marijuana. Tod pointed out to Steven the inmates who took the jacket and asked him to get it back. Steven asked them if they had the jacket and they said they did not. As Steven returned, he noticed the jacket on the end of his bunk and gave it to Tod. Tod checked the jacket and stated the marijuana was gone.

### C. *March 12, 1987*

On March 12, 1987, Robert Hilton was an inmate in the San Diego County Jail. As Robert tried to sleep, appellant approached and stated he liked Robert's jacket. Appellant demanded the jacket and told Robert if he did not turn it over, he would beat him. Robert refused to give up the jacket and appellant, true to his word, began beating him. Another inmate stopped the fight. As soon as that inmate walked away, however, appellant kicked Robert in the groin and took the jacket.

## II

### DISCUSSION

### A. *Instruction on Lesser Included Offense**

. . . . . . . . . . . . . . . . . . .

### B. *Instruction on Great Bodily Injury*

 Appellant argues the trial court erred in instructing the jury that "[a] bone fracture constitutes a significant and substantial physical injury within the meaning of Penal Code section 12022.7." We agree and reverse the great bodily injury finding.

Appellant was charged with assault by means of force likely to produce great bodily injury on Rosa Rodriguez. (§ 245, subd. (a)(1).) Attached to

---

*See footnote 1, *ante,* page 1490.

that charge was an allegation appellant intended to and did inflict great bodily injury within the meaning of section 12022.7. The jury was properly instructed that if it found appellant committed the charged offense, it was then to determine whether he intended to and did inflict great bodily injury on the victim. The court instructed the jury that "The term 'great bodily injury' as used in this instruction means a significant or substantial physical injury. Minor or moderate injury of a temporary nature [does] not constitute great bodily injury within the meaning of this instruction." (See CAL-JIC No. 17.20.) The trial court further instructed the jury a bone fracture was a significant and substantial injury within the meaning of section 12022.7.

Appellant contends it is error to instruct that *any* bone fracture is a substantial and significant injury for the purposes of section 12022.7. Appellant notes the section itself does not so state. Appellant argues such an instruction usurps the function of the jury and amounts to a partially directed verdict on the allegation of great bodily injury. Appellant argues such usurpation is a denial of his federal constitutional right to trial by jury and contends such error requires per se reversal.

In requesting the subject instruction, the prosecutor cited *People* v. *Villarreal* (1985) 173 Cal.App.3d 1136 [219 Cal.Rptr. 371]. We do not find *Villarreal* persuasive authority for the proposition that a broken bone, as a matter of law, always constitutes great bodily injury. In *Villarreal* the section 12022.7 allegation was based on the victim's nose being broken. The victim was confined to a hospital for five days and underwent surgery. Since the assault, the victim was on medication to help him breathe, had sinus congestion, headaches and was unable to sleep or concentrate. The victim also suffered broken teeth and had trouble chewing for one and a half months. (*Id.* at p. 1139.)

The trial court instructed that a bone fracture constitutes a substantial and significant injury within the meaning of section 12022.7. The propriety of the instruction was contested and the Court of Appeal concluded "the aforementioned instruction was properly given because a bone fracture, *under the circumstances of this case,* as a matter of law, '. . . constitutes a substantial and significant physical injury within the meaning of Penal Code section 12022.7.'" (*People* v. *Villarreal, supra,* 173 Cal.App.3d at pp. 1139-1140, italics added.)

The conclusion in *Villarreal* that a bone fracture was, as a matter of law, great bodily injury, at least under the facts of that case, was based on reasoning found in *People* v. *Johnson* (1980) 104 Cal.App.3d 598 [164 Cal.Rptr. 69]. The issue in *Johnson,* however, was not the propriety of an

instruction that every bone fracture was, per se, a substantial and significant injury. The issue was whether a broken jaw was sufficient evidence of great bodily injury pursuant to section 12022.7.

The *Johnson* court noted that in *People* v. *Caudillo* (1978) 21 Cal.3d 562, 588 [146 Cal.Rptr. 859, 580 P.2d 274], the Supreme Court held that great bodily injury, for the purposes of Penal Code section 12022.7, must be a significant and substantial injury as contrasted with injuries that could logically be described as constituting only transitory and short-lived bodily distress that do not fall within the contours of injuries that are severe and protracted.

In discussing whether a broken jaw could qualify as a great bodily injury the *Johnson* court stated: "It is common knowledge that a bone fracture is not merely a transitory bodily distress, but a severe and protracted injury which causes significant pain and requires considerable time to heal. In other words, in case of a bone fracture the double criteria set out in *Caudillo* are present. This type of injury is of both sufficient severity and permanence and hence constitutes a substantial and significant physical injury within the delineation of both *Caudillo* and the statute." (*People* v. *Johnson, supra,* 104 Cal.App.3d at p. 609.)

While this observation may have been true with regard to the broken jaw in the *Johnson* case, we do not believe it is universally true. There are 206 bones in the human body ranging in size from the femur of the leg to the ungual phalange of the little toe. (Gray, Anatomy of the Human Body (26th ed. 1954) p. 119.) Bone fractures are also variable, ranging from compound fractures of major bones to hairline fractures of very small ones. At their worst, fractures may be life threatening and cause crippling injuries; at their least, they may cause nothing more than frantic jumping—the result of a toe stubbed against an unmoving chair leg. The point is that bone fractures exist on a continuum of severity from significant and substantial to minor.

Nor is there any legislative pronouncement that the fracture of a bone is great bodily injury as a matter of law. In *Johnson* the court noted that when originally enacted in 1976, section 12022.7 defined great bodily injury as " 'a serious impairment of physical condition, which includes any of the following: (a) Prolonged loss of consciousness. (b) Severe concussion. (c) Protracted loss of any bodily member or organ. (d) *Protracted impairment* of function of any bodily member or organ or *bone*. (e) A wound or wounds requiring extensive suturing. (f) Serious disfigurement. (g) Severe physical pain inflicted by torture.' (Italics added.)" (*People* v. *Johnson, supra,* 104 Cal.App.3d at p. 609.)

The court in *Johnson* cited *Caudillo* for the proposition that the deletion of these specific examples of great bodily injury in the 1977 version of section 12022.7 was not done with the intention of lessening the magnitude of the bodily injury required by the section but was done merely to eliminate the possibility that the detailed definitions would be taken as all-inclusive and would leave no room for a finding by the trier of fact of a great bodily injury of equal magnitude to the categories specified in the detailed definitions but not coming literally within any of them. (104 Cal.App.3d at p. 109.)

While these observations in *Johnson* support its conclusion that a fractured bone may be great bodily injury, it argues against the conclusion that a bone fracture is great bodily injury as a matter of law. Each of the detailed categories originally listed in section 12022.7 required an application of judgment to support a finding of great bodily injury. The categories used such words as "severe," "prolonged," "protracted." Thus, pain or disfigurement or suturing or organ or bone impairment can be great bodily injury only if a trier of fact determines the injury is of a particular quality or intensity. There is no generic category of injury listed which qualifies as great bodily injury without a determination of the quality of that injury. The only reasonable conclusion, therefore, is that a bone fracture does not qualify automatically as a great bodily injury.

The court in *Johnson* found further support for its conclusion that a bone fracture could be great bodily injury by looking at the statutory definition of "serious bodily injury" provided in section 243, subdivision (e)(5), for the crime of felonious battery. (§ 243, subd. (d).) Serious bodily injury was defined as " 'a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; *bone fracture*; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement.' (Italics added.)" (*People* v. *Johnson, supra,* 104 Cal.App.3d at p. 609, fn. 7.)

The court in *Johnson* observed that the notions of "serious bodily injury" in section 243 and "great bodily injury" in section 12022.7 are "substantially similar." (See *People* v. *Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894]; *People* v. *Kent* (1979) 96 Cal.App.3d 130, 136 [158 Cal.Rptr. 35].) While this may be true, it does not mean that every bone fracture is either a serious or great bodily injury. Section 243, subdivision (e)(5), defines a serious bodily injury as "a serious impairment of physical condition." The section gives as an example of such a serious impairment, a bone fracture. In the context of the section, and when viewed in light of the above analysis of section 12022.7, we do not take this to mean that every bone fracture is serious bodily injury but merely that it can be if

it results in a serious impairment of physical condition. As such it supports the *Johnson* conclusion that a broken bone may be great bodily injury but does not support the conclusion that every bone fracture is great bodily injury as a matter of law.

We note again that both sections 243, subdivision (e)(5), and 12022.7, in their basic structure, require that a trier of fact determine whether any given injury rising to a level of seriousness such that it can, in the context of section 243, subdivision (e)(5), be described as a "serious impairment of physical condition" or in the context of section 12022.7 as a "substantial and significant" injury.

We conclude, therefore, it was error in this case for the trial court to instruct the jury that a bone fracture was a significant and substantial injury within the meaning of section 12022.7. We recognize our decision here is at odds with *Villarreal*. We observe, however, that the court in *Villarreal* did not hold it is proper to instruct that a bone fracture is substantial and significant injury within the meaning of section 12022.7. It stated the instruction was proper under the facts of that case. (*People v. Villarreal, supra,* 173 Cal.App.3d at pp. 1139-1140.)

Moreover, it is significant that *Villarreal* was decided before the California Supreme Court's decision in *People v. Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680]. ■ In *Figueroa* the court made clear that no matter how strong the evidence, a trial court cannot usurp the function of the jury by instructing that any element of a crime has been established. (*Id.* at pp. 724-741; see also *People v. Hernandez* (1988) 46 Cal.3d 194, 210-211 [249 Cal.Rptr. 850, 757 P.2d 1013]; *People v. Lawson* (1987) 189 Cal.App.3d 741, 746-751 [234 Cal.Rptr. 557].)

This rule applies not only to the elements of a crime but also to the elements establishing the degree of a crime. (*People v. Hutchins* (1988) 199 Cal.App.3d 1219, 1221-1222 [245 Cal.Rptr. 541]; *People v. Jarrell* (1987) 196 Cal.App.3d 604, 607-611 [242 Cal.Rptr. 219].) We believe it is inescapable the rule also applies to the elements of an enhancement such as section 12022.7. (See *People v. Hernandez, supra,* 46 Cal.3d at p. 210.)

■ We conclude the instructional error is prejudicial.[3] It may be argued that while the injury in the present case involved a bone fracture that

---

[3] Appellant argues the trial court's instruction that a bone fracture was a significant and substantial injury within the meaning of section 12022.7 was a partial directed verdict and requires per se reversal of the great bodily injury finding. (See *Rose v. Clark* (1986) 478 U.S. 570, 578, 580-581 [92 L.Ed.2d 460, 470-472, 106 S.Ct. 3101].) We need not address whether the erroneous instruction in this case requires per se reversal. At the very least the applicable

required medical attention, it was not as serious an injury as that in *Villarreal*. While a doctor had to set the victim's nose in this case, no surgery was involved, no life threatening impairment of breathing occurred and there is no evidence of a curtailment of the victim's daily activities. While a jury could very easily find the harm here to be great bodily injury, a reasonable jury could also find to the contrary. Under *Chapman* we cannot say the instructional error was harmless. (See *Chapman* v. *California, supra,* 386 U.S. at p. 21 [17 L.Ed.2d at pp. 708-709].)

The finding of the infliction of great bodily injury is reversed; in all other respects the judgment is affirmed.

Nares, J., concurred.

**KREMER, P. J.**—Concurring and Dissenting.

I concur with the majority opinion insofar as it affirms portions of the judgment. I respectfully dissent on the issue of the great bodily injury instruction. While the majority's approach has, in the abstract, the virtue of internal logic, I believe its conclusion to violate the intent of the Legislature and to be contrary to both appellate and Supreme Court precedent. I would affirm the judgment in its entirety.

An instruction identical to the instruction challenged here was approved in *People* v. *Villarreal* (1985) 173 Cal.App.3d 1136, 1139-1141 [219 Cal.Rptr. 371]. In *Villarreal* the assault victim suffered multiple fractures and displacement of nasal bones. After the assault the victim was on medication to help him breathe and suffered from sinus congestion, headaches and the inability to sleep or concentrate. The victim also suffered two broken teeth and for a month and a half had difficulty chewing. Based upon analysis of statutory and decisional authority, the appellate court stated the instruction "was properly given because a bone fracture, under the circumstances of this case, as a matter of law, '. . . constitutes a substantial and significant physical injury within the meaning of Penal Code section 12022.7.' " (*Id*. at pp. 1139-1140.) I find the analysis in *Villarreal* to be persuasive and applicable here.

Here victim Rosa suffered a minimum of three fractures of her nasal bones. Her nose was swollen and obviously crooked. She had difficulty

standard of prejudice is that defined for federal constitutional error in *Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708-709, 87 S.Ct. 824, 24 A.L.R.3d 1065], i.e., was the error harmless beyond a reasonable doubt. (See *People* v. *Hernandez, supra,* 46 Cal.3d at pp. 210-211; *People* v. *Dyer* (1988) 45 Cal.3d 26, 59-65 [246 Cal.Rptr. 209, 753 P.2d 1]; *People* v. *Odle* (1988) 45 Cal.3d 386, 410-416 [247 Cal.Rptr. 137, 754 P.2d 184].) Using that standard, we conclude the instructional error here is prejudicial.

breathing. Medical attention was required. A doctor performed a "closed reduction" to reset Rosa's nose and placed packing in her nostrils for five days. If such medical procedures had been delayed, the need to cut and rebreak the nose would have been more likely. While Rosa's injuries may differ from those in *People* v. *Villarreal, supra,* 173 Cal.App.3d 1136, I believe the harm to Rosa also amounted to great bodily injury as a matter of law.

My conclusion is supported by Penal Code section 243 which establishes enhanced punishments for the crime of battery under various circumstances. Penal Code section 243, subdivision (d), sets forth the punishment for battery where "serious bodily injury" is inflicted on the person. Penal Code section 243, subdivision (e)(5), defines "serious bodily injury" as "a serious impairment of physical condition" specifically including *bone fracture.* In *People* v. *Burroughs* (1984) 35 Cal.3d 824, 831 [201 Cal.Rptr. 319, 678 P.2d 894], the Supreme Court analogized Business and Professions Code section 2053's term "great bodily harm" to Penal Code section 243's term "serious bodily injury." The court held bone fracture was by implication necessarily included within the definition of Business and Professions Code section 2053's term "great bodily harm."[1] I would similarly conclude bone fracture is also by implication necessarily included within the meaning of Penal Code section 12022.7's term "great bodily injury." The terms "serious bodily injury" and "great bodily injury" are essentially equivalent. (*Ibid.*) Logic and consistency require ascribing equivalent meanings to those equivalent terms.

Further, I believe *People* v. *Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680], does not compel a finding the trial court usurped the jury's function here. The court did not instruct the jury the evidence established an element of any crime or enhancement. Instead, the court simply properly told the jury if it in fact found appellant broke Rosa's nose during the crime, such fracture constituted great bodily injury.

I would hold the instruction on great bodily injury to be proper.

Respondent's petition for review by the Supreme Court was denied May 4, 1989.

---

[1] The court also noted: "There is no indication the Legislature intended to ascribe a different meaning to 'great bodily harm,' as that term is used in section 2053, than is signified by 'great bodily injury,' or, for that matter, 'serious bodily injury,' in the Penal Code sections we have discussed." (*People* v. *Burroughs, supra,* at p. 831.)