Filed 12/12/13  P. v. Cabrales CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073361 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 12F04881, 12F04988) |
| v. | |
| JORGE CABRALES, | |
| Defendant and Appellant. | |

A jury convicted defendant Jorge Cabrales of corporal injury to a cohabitant with a great bodily injury enhancement (Pen. Code, §§ 273.5, subd. (a), 12022.7, subd. (e); unless otherwise stated, statutory references that follow are to the Penal Code), threatening a witness (§ 136.1, subd. (c)), and two counts of criminal threats (§ 422).  The trial court sustained strike and serious felony allegations (§§ 667, subds. (b)-(i), 1170.12) and sentenced him to 22 years in state prison.

On appeal, defendant contends there is insufficient evidence to support the great bodily injury enhancement and reversing the enhancement entitles him to additional custody credits.  We affirm the judgment.

1

FACTS AND PROCEEDINGS

The jury acquitted defendant on two additional counts of corporal injury to a cohabitant. We do not recite the facts related to those counts as they are unnecessary to the appeal.

Brandy Cheatam lived with defendant, her former boyfriend.

On the morning of July 12, 2102, Lyle Giles saw a woman jump out of a car while yelling, "he's gonna kill me." The woman's nose was bleeding and she was crying. Giles called 911. When the police arrived, Cheatam told an officer that defendant, her boyfriend, accused her of cheating and punched her in the face.

On the way to the hospital Cheatam told a paramedic she had been hit with a closed fist multiple times. Cheatam also told her mother that defendant punched her in the face. At the hospital, she told the treating physician her husband hit her in the face. Cheatam later told a social worker that while she was in the car, defendant hit her in the face multiple times with his fists and she jumped out of the car. She told the social worker defendant would not stop calling her, she could not get away, and she was afraid of him.

Cheatam sustained a blunt force trauma to the face, causing a laceration to her nose and a nondisplaced nasal fracture. She had symptoms consistent with a concussion and had two black eyes for about a week.

On July 13, 2012, Cheatam received telephone calls, voicemail messages, and texts from defendant. In one voicemail, defendant told Cheatam she had until 10:00 p.m. to change her statement or the goons would come to her house. She responded by screaming to her mother that they had to go because defendant was "not playing."

Cheatam called 911 and three deputies responded at around 9:14 p.m. Cheatam told the deputies she was getting threatening calls and messages from her boyfriend, defendant. In one of the calls, defendant threatened to blow up her house unless she

2

changed her statements about prior domestic violence incidents. While the deputies were there, Cheatam took a phone call from defendant and gave the receiver to a deputy. The deputy heard a voice say, "Do you have the boys there? I don't care. It doesn't matter what happens to me, because the hit is already out." Cheatam told the deputy she felt her life was in danger because defendant, a gang member, had the capacity to carry out the threats. She then asked the deputy for safe housing. She later told a victim advocate that defendant had threatened to kill her and her family.

Testifying, Cheatam recanted the statements she made to her mother, law enforcement, the doctor, the paramedic, Giles, the social worker, and the victim advocate regarding defendant hitting or threatening her. She testified that she had lied about defendant because she had wanted him to go to prison for cheating on her and lying about it.

According to Cheatam, she and defendant were arguing in the car on July 12, 2012, after defendant accused her of spending the previous night with another man. She sustained the injury to her nose while she was in the car, bent over to light a cigarette. The next thing she remembered was that her nose was bleeding. Cheatam jumped out of the car when defendant stopped at a stop sign.

An expert on domestic violence testified that victims often completely change or minimize their story about what happened. Love, finances, children, fear, and religion are common reasons for this change.

Defendant's sister and his best friend's girlfriend both testified that neither ever saw defendant hit Cheatam.

Defendant testified on his own behalf. On July 12, Cheatam started yelling at him after he picked her up. As she leaned down to light a cigarette, defendant intentionally slammed on the brakes knowing she would hit her face on the dashboard. He did this because he wanted her to shut up. After he told her that he slept with another woman, Cheatam jumped out of the car. Defendant denied leaving threatening phone messages to

3

Cheatam.  He did tell her a hit was already out, but this referred to him sending a girl over to beat Cheatam up because defendant was angry with her for lying.

DISCUSSION

I

*Sufficiency of the Evidence of Great Bodily Injury*

Defendant contends there is insufficient evidence to sustain the great bodily injury enhancement.

In determining the sufficiency of the evidence, our role is limited.  Under the state and federal constitutional due process clauses, "the test of whether evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citations.]"  (*People v. Holt* (1997) 15 Cal.4th 619, 667, original italics.)

Section 12022.7, subdivision (e) requires imposition of a consecutive term of three, four, or five years for "[a]ny person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony[.]"  The term " 'great bodily injury' " is defined "a significant or substantial physical injury." (§ 12022.7, subd. (f).)  This "standard contains no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function."  (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)  A great bodily injury finding must be upheld on appeal if it is supported by substantial evidence, even if the circumstances might reasonably be reconciled with a contrary finding.  (*Ibid.*)  A victim need only suffer significant or substantial physical injury beyond that inherent in the offense itself.  (*Id.* at pp. 746-747, 750.)  "Proof that a victim's bodily injury is 'great' -- that is, significant or substantial within the meaning of section 12022.7 -- is commonly established by evidence of the severity of the victim's physical injury, the resulting pain,

4

or the medical care required to treat or repair the injury." (*People v. Cross* (2008) 45 Cal.4th 58, 66.)

Relying on *People v. Nava* (1989) 207 Cal.App.3d 1490 (*Nava*), defendant argues that the victim's primary injury, her fractured nose, is insufficient to sustain the great bodily injury enhancement. Noting the victim did not require stitches or other medical treatment besides getting some painkillers, defendant concludes the remaining evidence of injury likewise fails to sustain the enhancement.

Defendant's reliance on *Nava* is misplaced. *Nava* merely held it was error to instruct the jury that a bone fracture constitutes a significant and substantial physical injury within the meaning of the statute. (*Nava, supra*, 207 Cal.App.3d at p. 1494.) The court concluded that a broken bone may constitute great bodily injury, but every bone fracture does not constitute great bodily injury as a matter of law. (*Id.* at p. 1498.) The instruction in *Nava* was error because it usurped the fact-finding role of the jury. (*Id.* at pp. 1497-1498.) There was no similar instruction in this case.

The victim in *Nava* sustained a fractured nose. (*Nava, supra*, 207 Cal.App.3d at p. 1493.) The Court of Appeal did not hold that a fractured bone could never support a finding of great bodily injury. "While a jury could very easily find the harm here to be great bodily injury, a reasonable jury could also find to the contrary." (*Id*. at p. 1499.) The function of the reviewing court is not to reweigh the evidence, but to decide whether the record contains sufficient evidence to warrant the inference of guilt drawn by the trier of fact. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) *Nava* holds that a jury could reasonably sustain a great bodily injury enhancement based on a fractured nose. Where a jury makes such a finding, as it did here, we will not disturb it on appeal. Substantial evidence supports the true finding on the great bodily enhancement.

II

*Work Time Custody Credits*

5

Defendant contends he is entitled to more than 15 percent work time custody credits because reversal of the great bodily injury enhancement means that he was not convicted of a violent felony. (§§ 2933.1 [limiting credits to 15 percent for those convicted of violent felonies as defined in section 667.5, subdivision (c)], 667.5, subd. (c)(8) [felony with great bodily injury enhancement is a violent felony].) Since the jury validly sustained the great bodily injury enhancement, defendant's claim is without merit.

DISPOSITION

The judgment is affirmed.


                                                              HULL            , Acting P. J.



We concur:



        MAURO            , J.



        DUARTE          , J.


6