Filed 3/18/14  P. v. Priolo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY PRIOLO,<br><br>Defendant and Appellant. | H039045<br>(Santa Clara County<br>Super. Ct. Nos. C1067835,<br>C1079882)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

It is ordered that the opinion filed herein February 24, 2014, be modified in the following particulars:

1.  On page 7, line 5 of the second full paragraph, the third sentence beginning "At most, this constituted a 'partial submission . . .' " is deleted.

2.  On page 7, line 6 of the second full paragraph, the citation to *People v. Soranno* (1971) 22 Cal.App.3d 312 is deleted.

3.  On page 8, lines 10-11, the semicolon and citation "see also *Soranno, supra,* at p. 317" are deleted.

There is no change in judgment.

The petition for rehearing is denied.

_____
BAMATTRE-MANOUKIAN, J., ACTING P.J.


_____
MÁRQUEZ, J.


_____
GROVER, J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>TIMOTHY PRIOLO,<br><br>　　　Defendant and Appellant. | H039045<br>(Santa Clara County<br>　Super. Ct. Nos. C1067835, C1079882) |

## I.　　INTRODUCTION

In case No. C1067835, defendant Timothy Priolo pleaded no contest to vehicular manslaughter with gross negligence (count 1; Pen. Code, § 192, subd. (c)(1)[1]), evading a police officer and proximately causing death (count 2; Veh. Code, § 2800.3, subd. (b)), and driving while his license was suspended for a DUI conviction (count 3; Veh. Code, § 14601.2, subd. (a)).  After a court trial, he was found to have personally inflicted great bodily injury (§ 12022.7) in the commission of counts 1 and 2.

In case No. C1079882, defendant pleaded no contest to solicitation of murder. (§ 653f, subd. (b).)  Defendant was sentenced to an aggregate prison term of 11 years in both cases.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

On appeal, defendant contends there is insufficient evidence to support the two allegations that he personally inflicted great bodily injury (§ 12022.7) in case No. C1067835. Defendant also contends the trial court violated his constitutional right to confrontation at the court trial on the great bodily injury allegations by considering testimony from the preliminary hearing. For the reasons stated below, we will affirm the judgment.

## II. BACKGROUND

In this appeal, defendant raises issues related to case No. C1067835 only. In that case, the charges arose out of a vehicle accident in which one of the passengers, Aaron Vega, was killed. In the trial court, defendant, who had been driving the vehicle, contested only the allegations that he personally inflicted great bodily injury on another passenger, Arturo Leon.

### A. *Preliminary Hearing*

A preliminary hearing was held on March 29 and 30, 2010.

Leon testified that he spent the evening of January 30, 2010 and the early morning hours of January 31, 2010 with Vega and defendant. They had gone to a couple of bars and then to Mountain Charley's in downtown Los Gatos. They left near closing time. At that point, Nick Chadbourne was with them.

Defendant drove the group in his black Mustang. Vega sat in the front passenger seat; Leon and Chadbourne were in the rear passenger area. They drove around Los Gatos and then started back towards San Jose, where they all lived.

At some point, defendant was talking on his cell phone, apparently to his girlfriend. Leon heard defendant say, " 'I'll be there right now.' " Defendant then began to drive faster. Leon estimated that defendant was driving between 80 and 90 miles per hour, on a " 'little road.' " It was "kind of scary," and Leon put on his seatbelt.

2

Leon looked back and saw the lights of a police vehicle. He told defendant to slow down. He thought that if defendant did not slow down, they would crash. In fact, they did. After the impact, Leon felt "[f]resh" pain in his lower back. He was taken to the hospital following the accident, although the hospital did "nothing" for him. He had a "couple [of] bruises" and back pain. His back pain continued through the time of his testimony at the preliminary hearing, and he wore a back brace during that time period.

At the scene, Leon told an officer that defendant had been driving at a rate of about 100 miles per hour, that defendant said there was a police officer behind him, and that he had told defendant to stop. "And then all of a sudden I see . . . the island in front of us . . . and then we just ran into that." At the hospital, he told officers he thought defendant was driving at a rate of "over 100" miles per hour and that he "knew [they] were gonna hit something."

Los Gatos Police Officer Glenn Young saw defendant's car traveling at a high rate of speed at about 2:00 a.m. on January 31, 2010. The speed limit was 25 miles per hour, but defendant was driving at a rate of about 40 to 50 miles per hour. Officer Young, who was in full uniform and driving a marked police car, began to follow defendant.

While Officer Young was following him, defendant failed to stop at a stop sign and accelerated to an even higher speed. Defendant passed another vehicle in a no passing zone, by driving into the oncoming traffic lanes. At that point, Officer Young activated his emergency lights and sirens. However, defendant did not pull over.

Defendant ran another stop sign. Officer Young was driving at a rate of about 80 miles per hour, but he was not catching up to defendant. He lost sight of defendant's car when the road turned. He then came upon a big cloud of smoke and saw defendant's car in the center of an intersection.

Firefighters were called out to the scene. Vega, the front passenger, was deceased. The firefighters used the " 'Jaws of Life' " to cut off the roof of the car and extricate the

3

other three people inside.  Defendant told a firefighter that he had been driving at a rate of 150 miles per hour.

Amanda Garcia was defendant's girlfriend at the time.  On the night of the accident, she had been assaulted at a Jack in the Box.  She called defendant, who told her he was coming to assist her.  He told her, " 'I'm going fast,' " and specified that he was driving at a rate of 110 miles per hour.

### B.    Plea Proceedings

On September 19, 2011, defendant pleaded no contest to the three charges in case No. C1067835:  vehicular manslaughter with gross negligence (count 1; § 192, subd. (c)(1)), evading a police officer and proximately causing death (count 2; Veh. Code, § 2800.3, subd. (b)), and driving while his license was suspended for a DUI conviction (count 3; Veh. Code, § 14601.2, subd. (a)).  At the same hearing, defendant pleaded no contest to the charge of soliciting murder (§ 653f, subd. (b)) in case No. C1079882.

After taking defendant's pleas, the trial court noted that the matter would be set for a court trial on the allegations that defendant personally inflicted great bodily injury (§ 12022.7) in the commission of counts 1 and 2 in case No. C1067835.  The trial court noted that the court trial could be conducted "by way of written documents" or with "live testimony."

Trial counsel responded:  "We anticipate in whole or in part that part of [the court trial] will be submitted on the basis of the preliminary [hearing] transcript.  It may be appropriate for the Court to take a look at that."  The trial court replied, "I think I may get a head start on that since it does appear to be a little voluminous.  Excellent."  Defendant subsequently submitted a "Memorandum of Law Regarding GBI Enhancement," in which he referenced evidence from the preliminary hearing.

4

## C.    Court Trial

At the court trial held on March 26, 2012, Leon testified as follows.  On January 31, 2010, he got into a car that defendant was driving.  Leon sat behind defendant.  A car accident occurred while defendant was driving.

Prior to the accident, Leon's back was "fine."   Immediately after the accident, he had "pretty bad" pain in his lower back.  He was taken to the hospital but released after about four hours.  The hospital gave him pain pills to take at home; he used all of them except for one.

The pain in Leon's back lasted three to four months.  Leon bought a back brace and wore it for a couple of months.  He stayed on "bed rest" for about four or five months:  he was "mobile," but he "laid down most of the time" because of the pain.

Leon found it was not easy to walk up stairs following the accident.  He had difficulty walking for about a month, and he used a walker during that time.  He did not lift anything so that his back could rest.  By April of 2010, he was still in "[a] little" discomfort, but he no longer had difficulty walking.

Leon did not participate in rehabilitation or physical therapy.  Although he "didn't feel too bad about [his] back," he would have gone for further medical treatment if his insurance had covered it.[2]

The parties stipulated that Leon "was not an accomplice nor aiding and abetting in the speeding process."  The parties also stipulated that a CAT scan of Leon's back revealed a fracture of the L2 vertebra.

Following the testimony at the court trial, the parties submitted briefs concerning whether Leon's injuries constituted great bodily injury.  On May 31, 2012, the trial court found the two great bodily injury allegations true.

---

[2] At some point, Leon received a $7,500 payment from defendant's insurance company.

### D. Sentencing

At the sentencing hearing, the trial court imposed the six year midterm for count 2 in case No. C1067835, evading a police officer and proximately causing death (Veh. Code, § 2800.3, subd. (b)), with a consecutive three-year term for the great bodily injury allegation (§ 12022.7). Pursuant to section 654, the trial court stayed the term for count 1, vehicular manslaughter with gross negligence (§ 192, subd. (c)(1)). The trial court imposed a consecutive two-year term for the solicitation of murder charge in case No. C1079882. The aggregate prison term was 11 years.

## III. DISCUSSION

### A. Confrontation

We first address defendant's claim that the trial court violated his constitutional right to confrontation at the court trial on the great bodily injury allegations, by considering testimony from the preliminary hearing.[3]

The Attorney General contends that defendant waived or invited any error. "[T]he doctrine of invited error operates to estop a party from asserting an error when the party's own conduct has induced its commission [citation], and from claiming to have been denied a fair trial by circumstances of the party's own making [citation]." (*People v. Lang* (1989) 49 Cal.3d 991, 1031-1032.)

Here, as noted above, defendant suggested that the trial court read the preliminary hearing transcript prior to the court trial, and the trial court agreed to do so. Defendant then referenced specific testimony from the preliminary hearing in the brief he submitted prior to the court trial. During the court trial, he again referenced the preliminary

---

[3] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

6

hearing, arguing that there had not been any evidence of great bodily injury.[4] Finally, during the court trial he objected to the introduction of any evidence that did not relate directly to the degree of injuries that Leon sustained. "The record indicates that trial counsel explicitly endorsed the procedure defendant now challenges on appeal. Defendant has therefore waived this claim. [Citation.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 96; see *People v. Foster* (1967) 67 Cal.2d 604, 606 ["any objection to the use of the preliminary hearing transcript at the trial was waived when defense counsel, in defendant's presence and without objection by him, joined in the stipulation regarding the use of that transcript"].)

Defendant claims that even if he agreed that the trial court could consider the preliminary hearing transcript, the trial court was required to advise him of his right to confrontation and to obtain an express waiver of that right. He relies on the principle stated in *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605 (*Bunnell*): "[I]n all cases in which the defendant seeks to submit his case for decision on the transcript or to plead guilty, the record shall reflect that he has been advised of his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination."

Here, defendant did not "submit his case for decision on the transcript" of the preliminary hearing. (*Bunnell, supra,* 13 Cal.3d at p. 605.) Rather, he agreed it would be appropriate for the trial court to read the preliminary hearing transcript prior to the court trial, during which he exercised his right to confrontation of Leon, the only witness who testified. At most, this constituted a "partial submission on the transcript of the preliminary hearing." (*People v. Soranno* (1971) 22 Cal.App.3d 312, 317 (*Soranno*).) It appears defendant sought to have the trial court read the preliminary hearing transcript

---

[4] Defendant argued: "What we have is a preliminary [hearing] transcript in this case that spans about 300 pages of which there is one page where [the prosecutor] addresses . . . Leon about complaints of back pain. There is no follow up with diagnosis and treatment. There is no stay in the hospital. There is merely a perfunctory examination and then the victim is released."

because he believed that it supported his position that Leon had not suffered great bodily injury. It also appears defendant believed that, if the trial court read the preliminary hearing transcript, the court trial could focus solely on that disputed issue. "In these circumstances, counsel's choice ultimately to exercise defendant's right of confrontation in only a limited manner was not a 'submission,' but rather, was no more than a tactical decision within counsel's discretion to make. [Citations.]" (*People v. Robertson* (1989) 48 Cal.3d 18, 40 [no advisements and waivers required where defendant stipulated to admission of preliminary hearing transcript at penalty phase].) "Because there was no 'submission' in the present case, the requirements of [advice and waivers] are inapplicable." (*People v. Marella* (1990) 225 Cal.App.3d 381, 387; see also *Soranno, supra,* at p. 317.)

For the reasons stated above, the trial court did not violate defendant's Sixth Amendment right to confrontation by considering the preliminary hearing transcript at the court trial on the great bodily injury allegations.

### B. *Sufficiency of the Evidence*

Defendant contends there is insufficient evidence to support the allegations that he personally inflicted great bodily injury (§ 12022.7) in the commission of the vehicular manslaughter and evading counts in case No. C1067835. He argues that the evidence did not show that he personally inflicted the injuries to Leon, and that Leon's injuries did not constitute great bodily injury. As explained below, we disagree.

#### 1. Standard of Review

In reviewing a claim of insufficiency of the evidence on appeal, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576, quoting *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) "An appellate court must view the evidence in the light most favorable to respondent and presume in support of the

8

judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)

### 2. Causation

Section 12022.7, subdivision (a) provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

"[T]he meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning. Commonly understood, the phrase 'personally inflicts' means that someone 'in person' [citation], that is, directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured.' [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 68 (*Cross*).)

"[F]or the [great bodily injury] enhancement to apply, the defendant must be the *direct,* rather than proximate, cause of the victim's injuries." (*People v. Warwick* (2010) 182 Cal.App.4th 788, 793 (*Warwick*); see also *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 349 ["To 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury"].)

In *People v. Guzman* (2000) 77 Cal.App.4th 761 (*Guzman*), the defendant, while driving under the influence, made an unsafe turn into oncoming traffic, causing a collision with another vehicle, which injured his passenger. (*Id.* at pp. 763-764.) On appeal, the defendant challenged a great bodily injury enhancement on the ground he did not "*personally*" injure his passenger because "the other driver involved in the accident is the person who directly performed the act that caused the injury." (*Id.* at p. 764.) The Court of Appeal rejected this claim, reasoning: "[A]ppellant turned his vehicle into oncoming traffic. This volitional act was the direct cause of the collision and therefore was the direct cause of the injury. Appellant was not merely an accomplice. Thus, appellant personally inflicted the injury on [his passenger]. Further, the accidental nature

9

of the injuries suffered does not affect this analysis. The 1995 amendment to section 12022.7 deleted the requirement that the defendant act 'with the intent to inflict the injury.' " (*Ibid.*)

In *People v. Valenzuela* (2010) 191 Cal.App.4th 316, the issue was whether the trial court could find that a prior conviction of reckless driving involved personal infliction of great bodily injury by the defendant. (*Id.* at p. 320.) The trial court determined that the prior conviction was a felony involving the personal infliction of great bodily injury, making it a serious felony. (*Ibid.*) The appellate court found insufficient evidence to support that determination, since the only evidence was the defendant's "bare plea." (*Id.* at p. 323.) There were no "additional facts regarding the crime" and thus "no facts describing the cause of the victims' injuries." (*Ibid.*)

In contrast to *Valenzuela*, the record in *In re Richardson* (2011) 196 Cal.App.4th 647 contained facts underlying the defendant's prior conviction for evading a police officer and causing serious bodily injury. Specifically, the record established that the defendant, "while being pursued by law enforcement officers," failed to negotiate a turn, crashed through a fence, and landed on an awning, which gave way. (*Id.* at p. 660.) The victims were injured " 'by flying debris' " from the crash. (*Ibid.*) This evidence established that the defendant had been convicted "for personally inflicting the injuries" during the commission of the prior offense. (*Ibid.*)

Here, at the court trial, the evidence established that defendant was speeding and evading a police officer at the time of the accident that caused Leon's injuries, and that Leon "was not an accomplice nor aiding and abetting." The evidence at the preliminary hearing established that there was no other vehicle involved in the collision and that defendant was speeding so fast on a "little road" that Leon believed they were going to crash. The crash occurred just after the road curved, when defendant drove into a traffic island in an intersection. This evidence was sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that defendant's "volitional act" of driving at extremely

10

high speed "was the direct cause of the collision and therefore was the direct cause of the injury." (*Guzman, supra,* 77 Cal.App.4th at p. 764.)

Defendant additionally claims that the evidence established only his negligence or recklessness. He claims that the great bodily injury enhancement requires a finding that the defendant had the intent to commit an act that would probably and directly result in an injury to another, similar to the intent required for an assault. (See *People v. Wyatt* (2010) 48 Cal.4th 776, 780.) Defendant takes the position that if he "simply lost control of the vehicle at some point and hit something," the great bodily injury enhancement cannot stand.

Contrary to defendant's claim, section 12022.7, subdivision (a) "does not contain[] an intent element in addition to the general or specific intent element of the underlying felony or attempted felony to which it applies." (*People v. Poroj* (2010) 190 Cal.App.4th 165, 173.) Although "section 12022.7, subdivision (a) 'has been interpreted to require . . . a general criminal intent, . . . the only intent required is that for the underlying felony.' [Citations.]" (*Ibid.*)

Even if, as defendant claims, the intent required for a section 12022.7 enhancement is the same as the intent required for a conviction of assault, the evidence here would be sufficient to support the trial court's finding. The circumstances here are similar to those in *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181 (*Aznavoleh*), where the defendant "deliberately ran a red light while racing another vehicle on a busy city street" even though his passengers repeatedly told him to slow down. (*Id.* at p. 1189.) The defendant saw another vehicle start turning left as he was approaching an intersection, but he "made no effort to stop, slow down, or otherwise avoid a collision with [that] vehicle." (*Ibid.*) The court upheld the defendant's conviction of assault with a deadly weapon, finding that "an objectively reasonable person with knowledge of these facts would appreciate that an injurious collision, i.e., a battery, would directly and probably result from his actions." (*Ibid.*)

11

Here, defendant was speeding so fast while driving on a "little road" that Leon believed they were going to crash. Defendant did not slow down or stop despite the fact that he was being pursued by a police car, with its lights and siren on, and despite one of his passengers telling him to do so. In fact, he drove faster – so fast that the officer could not catch up to him. There was no evidence defendant even made any effort to slow down when the road curved. On this record, "an objectively reasonable person with knowledge of these facts would appreciate that an injurious collision, i.e., a battery, would directly and probably result from [defendant's] actions." (*Aznavoleh, supra,* 210 Cal.App.4th at p. 1189.)

Defendant's reliance on two other assault cases involving high-speed police chases – *People v. Cotton* (1980) 113 Cal.App.3d 294 and *People v. Jones* (1981) 123 Cal.App.3d 83 – is misplaced. "In both cases, the court concluded the evidence was insufficient to support the convictions because there was no evidence from which the jury could have inferred the defendants deliberately drove their vehicles into the cars with which they collided." (*Aznavoleh, supra,* 210 Cal.App.4th at p. 1190.) However, "[s]ubsequent controlling authority fatally undermines both of these opinions. [Citation.]" (*Ibid.*, citing *Williams, supra,* 26 Cal.4th at p. 788.) "[A] defendant need not intend to commit a battery, or even be subjectively aware of the risk that a battery might occur." (*Ibid.*)

We conclude that there was substantial evidence to support a finding that defendant was "the *direct,* rather than [merely the] proximate, cause of the victim's injuries" (*Warwick, supra,* 182 Cal.App.4th at p. 793) and thus that the evidence was sufficient to support the great bodily injury allegation.

### 3. Degree of Injury

Section 12022.7, subdivision (f) provides: "As used in this section, 'great bodily injury' means a significant or substantial physical injury."

"[D]etermining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law . . . but a factual inquiry . . . . [Citations.] ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the [trier of fact] to decide." (*Cross, supra,* 45 Cal.4th at p. 64.) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. [Citations.]" (*Id.* at p. 66.)

As defendant points out, "a bone fracture does not qualify automatically as a great bodily injury." (*People v. Nava* (1989) 207 Cal.App.3d 1490, 1497 (*Nava*).) "[B]one fractures exist on a continuum of severity from significant and substantial to minor." (*Id.* at p. 1496.) In this case, however, the evidence supported a finding that the fracture of Leon's vertebra was significant and substantial, not minor.

In *Nava*, the defendant broke the victim's nose in three places. (*Nava, supra,* 207 Cal.App.3d at p. 1493.) The trial court erroneously instructed the jury that " '[a] bone fracture constitutes a significant and substantial physical injury within the meaning of Penal Code section 12022.7.' " (*Id.* at p. 1494.) The appellate court noted that a jury could "very easily find the harm . . . to be great bodily injury," but that the instructional error was not harmless because "a reasonable jury could also find to the contrary". (*Id.* at p. 1499.) The court explained: "While a doctor had to set the victim's nose in this case, no surgery was involved, no life threatening impairment of breathing occurred and there is no evidence of a curtailment of the victim's daily activities." (*Ibid.*)

In this case, there was evidence that the fracture of Leon's vertebra caused Leon to suffer long-term pain, which significantly impaired his daily life for at least two months. (Cf. *People v. Harvey* (1992) 7 Cal.App.4th 823, 827-828 [evidence supported great bodily injury finding where victim suffered second degree burns requiring treatment for

13

"at least a month" ].) At the court trial, Leon testified that he had such difficulty walking that he used a walker for a month. He also used a back brace for about two months. He described how, for several months, he "laid down most of the time" due to the pain. Based on the evidence that Leon's back pain was "protracted and far from transitory" (*id.* at p. 827), a reasonable jury could find that he suffered "a significant or substantial physical injury" within the meaning of section 12022.7. (*Nava, supra,* 207 Cal.App.3d at p. 1494.)

## IV.   DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.

14