Filed 8/19/20  P. v. Leguetelle CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B297491 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA118759) |
| v. | |
| ULYSSES LEGUETELLE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge.  Affirmed.

Emma Gunderson, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey and Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Ulysses Leguetelle was convicted following a jury trial of assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), with a true finding he had inflicted great bodily injury upon the victim, Antonio Simental (Pen. Code, § 12022.7, subd. (a)), and battery causing serious bodily injury (Pen. Code, § 243, subd. (d)).[1]  Leguetelle was sentenced to seven years in state prison.  On appeal Leguetelle contends the jury's finding he personally caused Simental to suffer great bodily injury is not supported by substantial evidence.  We affirm.

## FACTUAL BACKGROUND

Leguetelle was fired from his job at the Community Thrift Store in Covina on July 31, 2018.  Angry, Leguetelle yelled, threw things and then left the store.  He returned two hours later and confronted Simental, who had been Leguetelle's supervisor.  As Leguetelle came very close, Simental pushed him away.  Leguetelle responded by punching Simental on the left side of his face, knocking him to the cement floor of the loading dock.  Simental testified at trial Leguetelle's punch caused him to lose consciousness:

"Q.  When he hit you on the left side of your face, what happened to you?

"A.  Like, I was knocked out.  I was on the floor.

"Q.  When you say you were knocked out, did you lose consciousness at some point?

"A.  Yes.

"Q.  And you said then you were on the floor; right?

"A.  Yes.

---

[1]  Leguetelle was found not guilty of making a criminal threat.  (Pen. Code, § 422.)

"Q.  So, do you recall being on your feet at one point and then waking up on the floor?

"A.  Yes.  I remember I was standing up.  And then, when I came to, I'm asking myself, 'Why am I on the floor?'

"Q.  So, you don't recall how you got there?

"A.  No."

Hector Marquez, a coworker who helped Simental to his feet after he had been knocked down, confirmed that Simental appeared to have lost consciousness.  Marquez testified, when he saw Simental on the ground, Simental was not moving.  Then, when he got up, "he looked kind of out of it."

Simental also testified he suffered severe head pain following the blow:

"Q.  Did you feel pain on your head?

"A.  Yes.

"Q.  What kind of pain?

"A.  A lot of pain.

"Q.  Was it a severe pain to your head?

"A.  Yes.

"Q.  And this pain–was it just for that moment or did it last?

"A.  It lasted for about three days.

"Q.  And is–that was the same pain from the spot that your head touched the concrete; is that right?

"A.  Yes."

The punch and resulting fall to the ground also left visible marks on the left side of Simental's head, as shown by a photograph taken shortly after the incident and admitted into evidence at trial.

Finally, Simental testified to his need for stitches:

"Q.  What type of medical treatment did you receive?

"A.  They put four stitches in my mouth.

"Q.  Why was that?

"A.  Because of the blow that he gave me.

"Q.  Did you bleed as a result?

"A.  Yes.  A lot.

"Q.  And prior to the stitches going in, were you bleeding from inside your mouth?

"A.  Yes."[2]

## DISCUSSION

1. *Governing Law*

   a. *Great bodily injury*

Penal Code section 12022.7, subdivision (a), provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in state prison for three years." Subdivision (f), in turn, defines "great bodily injury" as "a significant or substantial physical injury."  The court, using CALCRIM No. 3160, instructed the jury with this statutory definition, with the additional explanation, "It is an injury that is greater than minor or moderate harm."  (See *People v. Cross* (2008) 45 Cal.4th 58, 63-64 [quoting *People v. Miller* (1977) 18 Cal.3d 873, 883, which had construed the term "great bodily injury" in former Penal Code sections to mean "significant or substantial bodily injury or damage as distinguished from trivial

---

[2]      On cross-examination Simental stated no X-rays were taken and he did not stay at the hospital after receiving the stitches.

4

or insignificant injury or moderate harm"].)[3] "[T]o be significant or substantial the injury need not be so grave as to cause the victim '"permanent," "prolonged," or "protracted"' bodily damage." (*Cross*, at p. 64; see *People v. Wolcott* (1983) 34 Cal.3d 92, 107 [injuries exceeding "transitory and short-lived bodily distress" qualify as "great bodily injury"].)

The Supreme Court has emphasized the question whether injuries suffered by a victim constitute great bodily injury within the meaning of Penal Code section 12022.7 is one of fact for the jury to decide: "This court has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.] '"A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description."' [Citations.] Where to draw that line is for the jury to decide." (*People v. Cross*, *supra*, 45 Cal.4th at p. 64; accord, *People v. Cardenas* (2015) 239 Cal.App.4th 220, 227.)

b.  *Standard of review*

In considering a claim of insufficient evidence in a criminal case, "'we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict–i.e., evidence that is reasonable, credible, and of solid value–such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In

---

[3]     The court used the same definition, included in CALCRIM No. 875, when instructing the jury on the substantive offense of assault with force likely to produce great bodily injury.

5

applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]"  [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'"  (*People v. Penunuri* (2018) 5 Cal.5th 126, 142; accord, *People v. Zamudio* (2008) 43 Cal.4th 327, 357; *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

"'[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.'"  (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281.)  The same deferential standard applies when reviewing a challenge to the sufficiency of the evidence to support a sentencing enhancement.  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

    2.  *Substantial Evidence Supports the Jury's Finding of Great Bodily Injury*

The evidence of Simental's loss of consciousness, albeit momentary, facial abrasions/bruises, severe head pain lasting for three days, and four stitches to stop internal bleeding in his mouth, taken together, was more than sufficient for the jury to find Leguetelle had personally inflicted great bodily injury within

the meaning of Penal Code section 12022.7.  (See *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047 ["[a]n examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury'"]; see also *People v. Clay* (1984) 153 Cal.App.3d 433, 459-460 [evidence victims' head wounds required three, five, six and seven stitches sufficient to affirm a great bodily injury finding as to each of the four victims].)

Leguetelle's challenge to the sufficiency of the evidence to support the jury's finding is essentially a request that we reweigh the evidence.  We decline the invitation, as we must.

Nor are we persuaded by Leguetelle's discussion of several appellate opinions in which those courts, based on the records before them, held the evidence was insufficient to support a great bodily injury finding.  (See *People v. Thomas* (1992) 2 Cal.4th 489, 516 ["[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts"].)  For example, in *People v. Richardson* (1972) 23 Cal.App.3d 403, 409, cited by Leguetelle, the court held the victim of a robbery, Rachel Denslow, who had been struck on her neck, causing her to fall, had not suffered great bodily injury.  The court explained, "Although she had said at the preliminary examination that she had been knocked unconscious, she testified at the trial, when asked whether there was any time when she was not aware of what was going on after the blow: 'No. I think I was aware most of the time, or at least shortly.'  Mrs. Denslow did not testify, nor did any physician or anyone else, as to sequelae of the single blow."  (*Id.* at pp. 409-410.)  Here, in contrast, Simental testified as to the continuing,

7

adverse consequences of Leguetelle's attack–four stitches in his mouth and severe head pain for three days.

Similarly unhelpful to Leguetelle is *People v. Nava* (1989) 207 Cal.App.3d 1490, quoted in his opening brief, in which the court, after observing "[t]here are 206 bones in the human body ranging in size from the femur of the leg to the ungual phalange of the little toe," held only that, while a fractured bone may constitute great bodily injury, it does not as a matter of law regardless of circumstance. (*Id.* at pp. 1496-1497.) "[P]ain or disfigurement or suturing or organ or bone impairment can be great bodily injury only if a trier of fact determines the injury is of a particular quality or intensity. There is no generic category of injury listed which qualifies as great bodily injury without a determination of the quality of that injury." (*Id.* at p. 1497.) Here, the properly instructed jury made the required determination of the quality of injury Simental had suffered. Substantial evidence supported its finding those injuries, even if not permanent, prolonged or protracted, were significant or substantial.

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.            FEUER, J.

8