Filed 8/17/20  P. v. Perez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EFREN VALLADARES PEREZ,<br><br>    Defendant and Appellant. | B292026<br><br>(Los Angeles County<br>Super. Ct. No. BA460888) |

APPEAL from a judgment in the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Convictions affirmed, remanded with directions.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, William H. Shin and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Efren Valladares Perez was convicted following a jury trial of driving under the influence of alcohol causing injury and hit-and-run driving. The jury also found true special allegations Perez had personally inflicted great bodily injury in the commission of a felony. On appeal Perez contends the trial court erred in failing to instruct the jury regarding the elements of the great bodily injury enhancement until after the jury had deliberated. Perez also argues the court erred by relying on impermissible factors in sentencing him to the upper term for driving under the influence. We affirm Perez's conviction, modify the sentence imposed for hit-and-run driving and remand to permit Perez to challenge his ability to pay the fines, fees and assessments the court imposed at sentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Information*

In an information filed December 19, 2017 Perez was charged with driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)), driving with a blood alcohol level of 0.08 percent or more causing injury (Veh. Code, § 23153, subd. (b)) and misdemeanor hit-and-run driving causing property damage (Veh. Code, § 20002, subd. (a)). As to the two felony counts, the information specially alleged Perez had personally inflicted great bodily injury on Ignacio Cano Sanchez-Benitez within the meaning of Penal Code section 12022.7, subdivision (a).[1]

---

[1]      Statutory references are to this code unless otherwise stated.

## 2. *Evidence at Trial*

At approximately 11:00 a.m. on September 10, 2017 Rukhulla Kazimov, a professional limousine driver, was driving his limousine home from his office, heading south on Las Palmas Avenue in Hollywood. While Kazimov was stopped at a stop sign at the intersection of Las Palmas and Lexington Avenue, a white sport utility vehicle (SUV) travelling about 30 miles per hour struck the right rear of Kazimov's limousine and proceeded to drive between it and the sidewalk, scraping the side of the limousine in the process. The SUV, whose driver was later identified as Perez, continued to drive very slowly to the next intersection. Kazimov, believing Perez was looking for a place to stop and exchange information, followed the SUV.

The light was red when Perez arrived at the intersection of Las Palmas and Santa Monica Boulevard. He made an abrupt right turn without pausing to see if there was oncoming traffic. Kazimov had already memorized Perez's license plate number and decided he would continue home. He waited for the light to change and turned right onto Santa Monica Boulevard. Kazimov turned right again at the next intersection onto McCadden Place and pulled over momentarily to radio his dispatcher and report the accident. Kazimov then proceeded north toward Lexington when he heard a loud collision and saw a bicyclist, later identified as Sanchez-Benitez, falling to the ground. Kazimov observed that the SUV had hit a parked car and come to a stop. Perez climbed out the driver's side window and fell to the ground.

Kevin Salazar was driving west on Santa Monica Boulevard on the morning of September 10, 2017 when a white SUV made a dangerous right turn onto Santa Monica from Las Palmas. Salazar testified the SUV did not slow down for

3

traffic and turned into the oncoming lane, almost hitting a bus traveling in the opposite direction. Salazar noticed a limousine behind the SUV. The limousine slowed at the light to wait for traffic to pass and then "sped off" after the SUV. Salazar thought the limousine was chasing the SUV, and he decided to follow to see what was happening. Salazar turned right onto McCadden behind Kazimov, who pulled over. As the SUV was traveling north on McCadden at approximately 40 miles per hour, Salazar saw it hit a bicyclist. Salazar testified it was a "violent impact"; he saw the bicyclist's body "fly through the air and hit the ground." The SUV then hit two parked cars with enough force that they collided with the cars parked behind them.

Salazar got out of his car and went to the driver's side of the SUV where he found Perez in the driver's seat. Salazar testified Perez smelled strongly of alcohol and appeared drunk: His eyes were bloodshot, and he was mumbling nonsensically. Perez was too inebriated to get out of the car by himself, so Salazar helped him out through the window. Perez passed out on the sidewalk. At one point Salazar walked to where Sanchez-Benitez was lying on the ground. Salazar observed Sanchez-Benitez had "blood all over his face, his leg, bleeding from his leg, just a lot of blood."

Raymond Garza was standing on the east side of McCadden near the intersection with Fountain Avenue on the morning of September 10, 2017. He saw a white SUV speeding north along McCadden toward Fountain; the SUV ran two stop signs and then collided with a bicyclist traveling west on Fountain. The impact sent the bicyclist flying approximately 30 or 40 feet. The SUV veered to the left and hit a parked car. Perez appeared "totally drunk. . . . [He] couldn't even walk or stand." Garza

approached Sanchez-Benitez, who was badly hurt. Garza said the scene was "horrific. It was really traumatizing." Sanchez-Benitez was "just so scared and hurt. . . . A lot of blood . . . . His body looked really mangled. I couldn't tell what was broken or what. It was just really scary."

Sanchez-Benitez testified he was riding his bicycle to work westbound on Fountain on the morning of September 10, 2017. While he was in the intersection of Fountain and McCadden, a white SUV ran the stop sign and hit him. He was knocked off his bicycle and landed further up the block. He tried to stand but could not feel his legs. He was bleeding from his eye, mouth and one leg. Sanchez-Benitez later learned he had broken his nose, eight ribs and his pelvis in four places. The base of his spine had broken off, and he was bleeding into his spinal column. He underwent emergency surgery on his spine, as well as emergency surgery to reattach his eyelid and lip. Sanchez-Benitez was in the hospital a total of 10 days after the accident. At the time of trial, nine months after the accident, Sanchez-Benitez testified he was in almost constant pain and had not been able to return to work because he could not stand or sit for long periods of time. He said his leg still went numb occasionally and was very painful. More than 1,000 pages of Sanchez-Benitez's medical records were admitted into evidence.

Los Angeles Police Officer Alan Munoz, a field collision investigator in September 2017, spoke to Perez in the hospital shortly after the accident. Munoz testified Perez smelled of alcohol and had red, watery eyes and a flushed complexion. Perez initially told Munoz he had two beers the previous night but later said he drank two beers the morning of the accident. Perez admitted he had rear-ended the limousine and told Munoz

he had not stopped because he did not want to deal with the police.  Perez said he then hit another car and claimed that car hit the bicyclist.

Perez consented to a blood test to determine his blood alcohol level.  The blood was drawn at 2:50 p.m., approximately four hours after the accident, and revealed Perez had a blood alcohol level of .164 percent.  The People's expert opined Perez would have had a blood alcohol level between .19 and .25 percent at the time of the accident.

### 3. *The Verdict and Sentence*

The jury found Perez guilty on all counts and found true the special allegations he had personally inflicted great bodily injury on Sanchez-Benitez during the commission of a felony. The trial court sentenced Perez to an aggregate state prison term of six years, consisting of the upper term of three years for driving under the influence of alcohol causing injury, plus three years for the great bodily injury enhancement, and a concurrent sentence of one year for hit-and-run causing property damage.  The court imposed and stayed pursuant to section 654 a sentence of six years for driving with a blood alcohol level of 0.08 percent or more causing injury, consisting of the upper term of three years, plus three years for the great bodily injury enhancement.  The court also imposed a $120 court operations assessment ($40 per conviction) (Pen. Code, § 1465.8), a $90 court facilities assessment ($30 per conviction) (Gov. Code, § 70373) and a $300 restitution fine (the statutory minimum) (Pen. Code, § 1202.4, subd. (b)).

# DISCUSSION

1. *Any Error in Failing To Instruct the Jury on the Great Bodily Injury Enhancement Prior to Deliberation Was Harmless*

a. *Relevant proceedings*

The trial court inadvertently failed to instruct the jury on the elements of the great bodily injury sentence enhancement prior to its deliberations.  Upon reviewing the verdict forms returned by the jury, the court realized the forms had included language directing the jury to find whether Perez had inflicted great bodily injury on Sanchez-Benitez during the commission of a felony and the jury had found the allegation true for both felony counts.  After consulting with the attorneys, the court decided, over defense counsel's objection, to instruct the jury on the great bodily injury enhancement and to have it consider again the enhancement allegations.

The trial court explained to the jury, "There is an additional bit of information that I need to give to you.  And we can address it I think relatively quickly.  But it's going to require that you go back into the jury room. . . .  There is, as I mentioned, some additional information that may or may not impact your decision in this case.  You decide whether it's impactful or not.  If you would change your verdict, then you'll let us know that is the situation.  Otherwise we'll proceed with the verdict forms that you have submitted."  After a brief recess to print the jury instruction and new verdict forms, the court continued, "[T]here is an issue, and the issue is that you made an express finding as to great bodily injury alleged in counts 1 and 2.  And whereas, undoubtedly you have a strong intuitive sense as to what that

7

expression means, it nonetheless does have a specific legal meaning, and I have to instruct you on that which I failed to do earlier. . . . To the extent that this instruction might impact the decision that you made, there are new verdict forms, fresh ones, with respect to counts one and two that you can indicate that change . . . . If this instruction doesn't make any difference as far as your previous verdict is concerned, then just leave it unchanged. . . ." "And the fact this instruction is being read in isolation, that is, apart from the others, is no indication that it is any more or less important that the others."

The court then instructed the jury on the elements of the great bodily injury enhancement.[2] After deliberating for an additional four minutes, the jury returned verdict forms again finding the special allegations true. At defense counsel's request, the jury was polled as to the verdict, and the court directed they be polled specifically on the great bodily injury enhancement. The court stated, "With respect to count 1 and the allegation that in the commission of the offense the defendant inflicted great

---

[2] The jury was instructed with CALJIC No. 17.20: "It is alleged in counts 1 and 2 that in the commission of each felony specified therein, the defendant personally inflicted great bodily injury on Ignacio Cano Sanchez-Benitez. If you find the defendant guilty of either crime, that is either count 1 or 2 or both, you must determine whether the defendant personally inflicted great bodily injury on Ignacio Cano Sanchez-Benitez in the commission of each crime. 'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury. The People have the burden of proving the truth of this allegation. If you have a reasonable doubt it is true, you must find it to be not true."

bodily injury, did you agree that great bodily injury was, in fact, inflicted by the defendant?"  Each juror replied affirmatively.

b.  *Governing law and standard of review*

Section 12022.7, subdivision (a), provides a three-year sentence enhancement for "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony . . . ."  Because the sentence enhancement increases the maximum penalty for the crime charged, the court is required to instruct the jury on the elements of the enhancement:  "[A] trial court's failure to instruct the jury on an element of a sentence enhancement provision (other than one based on a prior conviction), is federal constitutional error if the provision 'increases the penalty for [the underlying] crime beyond the prescribed statutory maximum.'" (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326; see *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 ["[o]ther than the fact of a prior conviction, any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt"].)

Claims of instructional error are questions of law, which we review de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Alvarez* (1996) 14 Cal.4th 155, 217; *People v. Jandres* (2014) 226 Cal.App.4th 340, 358.)  Failure to instruct the jury on an element of a sentence enhancement "is reversible under [*Chapman v. California* (1967) 386 U.S. 18, 24], unless it can be shown 'beyond a reasonable doubt' that the error did not contribute to the jury's verdict."  (*People v. Sengpadychith*, *supra*, 26 Cal.4th at p. 326; accord, *People v. Merritt* (2017) 2 Cal.5th 819, 827.)  In other words, the harmless error inquiry regarding an element omitted from the jury instructions requires the

reviewing court to determine if it is clear beyond a reasonable doubt a rational jury would have found the defendant guilty absent the error.  (*Merritt*, at p. 827; see *People v. Gonzalez* (2012) 54 Cal.4th 643, 666 ["[w]e have exhaustively reviewed the trial evidence to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element'"]; *People v. Mil* (2012) 53 Cal.4th 400, 417 ["[o]ur task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element'"].)

      c.  *Any error in the trial court's failure to instruct the jury on the sentencing enhancement was harmless beyond a reasonable doubt*

Perez argues the trial court's failure to instruct the jury on the great bodily injury enhancement prior to jury deliberations was not cured by the court reading the instruction after the fact and giving the jury an opportunity to reassess its findings.  We need not decide whether the procedure employed here adequately protected Perez's right to have the elements of the special enhancement allegation submitted to a jury because any error in failing to properly instruct the jury was harmless beyond a reasonable doubt.

As discussed, a true finding under section 12022.7, subdivision (a), required the jury to find Perez had personally inflicted great bodily injury on Sanchez-Benitez.  Perez argues the jury was not given a definition of great bodily injury and, therefore, there is no way of knowing what definition the jury used in determining great bodily injury was inflicted.  "Great bodily injury" is statutorily defined as "a significant or substantial physical injury."  (§ 12022.7, subd. (f); see CALCRIM

No. 3160 ["Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm"].)  To rise to the level of great bodily injury, an injury need not result in "'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)  Lacerations, bruises and abrasions are sufficient to sustain a finding of great bodily injury. (*People v. Odom* (2016) 244 Cal.App.4th 237, 247; *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.)  Similarly, a bone fracture, even a facial fracture where no surgery is required, can constitute great bodily injury.  (*People v. Nava* (1989) 207 Cal.App.3d 1490, 1499; see *People v. Villarreal* (1985) 173 Cal.App.3d 1136, 1140-1141 [evidence of a bone fracture supports a true finding on the great bodily injury enhancement and in some circumstances establishes a "'significant or substantial injury'" as a matter of law].)

The uncontested evidence at trial established Sanchez-Benitez was bleeding profusely at the scene of the accident.  He suffered multiple broken bones, including the severing of the base of his spine.  He was bleeding internally, and his eyelid and lip were partially detached.  He underwent two emergency surgeries, spending a total of 10 days in the hospital.  Nine months later, he was still under the care of physicians, suffered constant pain and was unable to work.  Even Perez's trial counsel effectively conceded Sanchez-Benitez's injuries were significant, stating during his closing argument, "There's no dispute that the young man was hurt, that he was hurt badly. . . .  We're not disputing that his bones were broken, that he was hurt, and that it was terrible."  On this record there is no evidence that could rationally lead to a finding other than that Sanchez-Benitez

11

suffered great bodily injury as a result of the accident. (See *People v. Villarreal, supra*, 173 Cal.App.3d at p. 1141 [multiple fractures of nasal bones, two broken teeth, surgery, five days in the hospital, and continued headaches and medical treatment constituted great bodily injury as a matter of law].)

Even if the instructional error was harmless as to the definition of great bodily injury, Perez argues, it was not harmless as to causation. To find Perez liable pursuant to section 12022.7, subdivision (a), the jury was required to find Perez personally inflicted Sanchez-Benitez's injuries.[3] "A defendant 'personally inflicts' great bodily injury if he directly causes the injury—that is, if the defendant 'himself' 'actually inflicts the injury' by 'directly perform[ing] the act that causes the physical injury.'" (*People v. Ollo* (2019) 42 Cal.App.5th 1152, 1156; accord, *People v. Cardenas* (2015) 239 Cal.App.4th 220, 228; ["'for the [great bodily injury] enhancement to apply, the defendant must be the direct, rather than the proximate, cause of the victim's injuries'"].)

During his closing argument Perez's attorney did not dispute Perez's SUV hit Sanchez-Benitez. Instead, he contended the accident was not caused because Perez was under the influence of alcohol, but because he was being chased by Kazimov and Salazar, which caused him to drive dangerously. Even if

---

[3] This is in contrast to Vehicle Code section 23153, subdivision (a), which penalizes a defendant for proximately causing an injury. (Veh. Code, § 23153, subd. (a) ["[i]t is unlawful for a person, while under the influence of any alcoholic beverage, to drive a vehicle and concurrently do any act forbidden by law, or neglect any duty imposed by law in driving the vehicle, which act or neglect proximately causes bodily injury to any person other than the driver"].)

there were evidence to support this theory, which is doubtful at best, and the jury had believed Perez's version of events, it would be legally irrelevant.

Whether Perez ran the stop sign because he was being chased or because he was under the influence of alcohol is of no moment. It was undisputed Perez's SUV hit Sanchez-Benitez and caused his injuries. These facts, together with the jury's unchallenged finding Perez was guilty of driving under the influence causing injury, are all that is required to find Perez liable under section 12022.7, subdivision (a). Perez is not absolved of culpability because other drivers' actions may have contributed to the accident. (See *People v. Guzman* (2000) 77 Cal.App.4th 761, 764 [defendant driving under influence of alcohol who made unsafe left turn into oncoming traffic personally inflicted great bodily injury on passenger even though other driver participated in causing the accident]; see also *People v. Elder* (2014) 227 Cal.App.4th 411, 421 ["[D]efendant engaged in a physical struggle with the victim. It was during the volitional act of struggling and attempting to pull away that the victim's injury was inflicted. Defendant was a direct cause of the injury. . . . Neither the accidental nature of the injury, nor the fact that it takes two to struggle, absolves defendant of responsibility for personally inflicting GBI on the victim"].)

In sum, there was no evidence at trial upon which a properly instructed, rational jury could have reached a different conclusion than that Perez personally inflicted great bodily injury on Sanchez-Benitez. Any error was harmless beyond a reasonable doubt.

2. *Perez Has Failed To Demonstrate the Trial Court Improperly Imposed the Upper Term Sentence for Driving Under the Influence Causing Injury*

a. *Governing law and standard of review*

When a determinate sentencing statute authorizes three possible terms of imprisonment, "the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "The court shall select the term which, in the court's discretion, best serves the interests of justice." (*Ibid*.) In exercising that discretion, the sentencing court "may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).)[4] The relevant circumstances may be obtained from the record in the case, the probation report, statements from the victim of the crime and evidence introduced at the sentencing hearing. (§ 1170, subd. (b); rule 4.420(b).)

Subject to certain exceptions, "a trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made." (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196; see *People v. Sandoval* (2007) 41 Cal.4th 825, 848; rules 4.408(a), 4.421.) The existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 816; *People v. Osband* (1996) 13 Cal.4th 622, 728; see *People v. Quintanill*a (2009) 170 Cal.App.4th 406, 413.)

---

[4] Citations to a rule or rules are to the California Rules of Court.

14

"The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 847.) In the absence of a showing the sentencing decision was irrational or arbitrary, "'"the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'" (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) A trial court abuses its discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Sandoval*, at p. 847; see *People v. Willover* (2016) 248 Cal.App.4th 302, 323.)

> b. *The trial court acted within its discretion in sentencing Perez to the upper term for driving under the influence causing injury*

In sentencing Perez to the upper term for driving under the influence of alcohol causing injury, the trial court identified four aggravating factors: the crime involved great violence, great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)); the victim was particularly vulnerable (rule 4.421(a)(3)); Perez was convicted of other crimes for which consecutive sentences could be imposed (rule 4.421(a)(7)); and the crime involved damage of great monetary value (rule 4.421(a)(9)). Perez's trial counsel did not object to the court's use of any of these factors.

Perez now contends the court erred in applying three of these factors. First, Perez argues the court could not rely on

15

Sanchez-Benitez's great bodily injury as a factor in aggravation because it imposed a sentencing enhancement based on the same fact. Second, Perez argues the finding Sanchez-Benitez was particularly vulnerable because he was riding a bicycle was improper because Sanchez-Benitez was not more vulnerable than any other pedestrian or bicyclist would have been. Finally, Perez argues there was insufficient evidence to show Perez had caused damage of great monetary value.

Even if Perez's arguments were not forfeited for failure to raise them in the trial court (see *People v. Boyce* (2014) 59 Cal.4th 672, 730-731 ["'[c]laims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' are subject to forfeiture, including 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed various factors, or failed to state any reasons or to give a sufficient number of valid reasons'"]), they are without merit.

As to the first factor, the Attorney General concedes the court could not both impose the great bodily injury sentence enhancement and rely on great bodily injury as an aggravating factor for imposing the upper term sentence. (See § 1170, subd. (b) ["[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law"]; *People v. Scott* (1994) 9 Cal.4th 331, 350 ["Although a single factor may be relevant to more than one sentencing choice, such dual or overlapping use is prohibited to some extent. For example, the court generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the

offense either to aggravate or to enhance a sentence"]; see also rule 4.420(c) ["a fact charged and found as an enhancement may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does so"].)

Contrary to Perez's argument, however, reliance on this factor was not entirely improper. There was ample evidence supporting the court's finding Perez acted with a high degree of cruelty, viciousness or callousness, which was not an element of any offense or sentence enhancement and was thus properly considered by the court during sentencing. The evidence established that, by 11 a.m. on the day of the accident, Perez had consumed enough alcohol to cause him to have more than twice the legal limit of alcohol in his system. When Perez hit Kazimov's car, instead of realizing he was impaired and stopping to take responsibility, he fled, and, in an attempt to escape responsibility for his actions, drove recklessly until he hit Sanchez-Benitez. Having done so, Perez still did not stop until his SUV hit a parked car and his airbags deployed. Even then Perez lied to the investigating officer later that day, first saying he had not consumed any alcohol since the night before and then saying he had consumed only two beers that morning. This evidence amply supported the court's finding Perez had acted with a high degree of cruelty, viciousness or callousness.

In addition, Perez does not challenge the court's reliance on Perez's conviction of another crime (hit-and-run driving) for which the court could have, but did not, impose a consecutive sentence.

These two aggravating factors constitute a sufficient basis for imposition of the upper term. To the extent the court also

17

articulated an impermissible factor to explain its sentencing choice, reversal for resentencing is not required because it is not reasonably probable the court would have chosen a lesser sentence had it not relied on such factors. (See *People v. Price* (1991) 1 Cal.4th 324, 492 ["[w]hen a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper"].)

Finally, Perez's argument the trial court erred by failing to consider any mitigating factors during sentencing is without merit. Even if a mitigating factor unquestionably exists, the weight or significance to assign it is within the trial court's broad discretion; the court is free to disregard it altogether and need not explain why it did so. (See *People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.)

3. *A Limited Remand Is Necessary To Afford Perez the Opportunity To Request a Hearing Concerning His Ability To Pay Fines, Fees and Assessments*

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) this court held it violated due process under both the United States and California Constitutions to impose a court operations assessment as required by Penal Code section 1465.8 or the court facilities assessment mandated by Government Code section 70373, neither of which is intended to be punitive in nature, without first determining the convicted defendant's ability to pay. (*Dueñas*, at p. 1168.) A restitution fine under Penal Code section 1202.4, subdivision (b), in contrast, is intended to be, and is recognized as, additional punishment for a crime. Section 1202.4, subdivision (c), provides a defendant's

18

inability to pay may not be considered a compelling and extraordinary reason not to impose the restitution fine; inability to pay may be considered only when increasing the amount of the restitution fine above the minimum required by statute. To avoid the serious constitutional questions raised by these provisions, we held, although the trial court is required to impose a restitution fine, the court must stay execution of the fine until it is determined the defendant has the ability to pay the fine. (*Dueñas*, at p. 1172.)[5]

Perez contends under *Dueñas* the court facilities and operations assessments should be reversed, and execution of the restitution fine stayed, unless and until the People prove he has the present ability to pay the fine.[6] As we explained in *People v.*

---

[5] Several courts of appeal have applied this court's analysis in *Dueñas* (e.g., *People v. Santos* (2019) 38 Cal.App.5th 923, 929-934; *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted Nov. 13, 2019, S257844 [applying due process analysis to court assessments]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030-1035). Others have rejected the due process analysis (e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946), or concluded the imposition of fines and fees should be analyzed under the excessive fines clause of the Eighth Amendment (e.g., *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061; *Kopp*, at pp. 96-97 [applying excessive fines analysis to restitution fines]). The Supreme Court granted review of the decision in *Kopp* to decide the following issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?"

[6] Perez did not raise this issue in the trial court. However, the People do not argue Perez has forfeited the issue on appeal,

*Castellano* (2019) 33 Cal.App.5th 485, *Dueñas* does not support that conclusion in the absence of evidence in the record of a defendant's inability to pay. "[A] defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*Castellano*, at p. 490; see *Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168-1169.)

We remand the matter to the trial court so that Perez may request a hearing and present evidence demonstrating his inability to pay the fine and assessments imposed by the trial court.

---

and we have generally declined to find forfeiture based on a defendant's failure to object to fines and fees prior to our opinion in *Dueñas*. As we explained in *People v. Castellano* (2019) 33 Cal.App.5th 485, 489, "[N]o California court prior to *Dueñas* had held it was unconstitutional to impose fines, fees or assessments without a determination of the defendant's ability to pay. Moreover, none of the statutes authorizing the imposition of the fines, fees or assessments at issue authorized the court's consideration of a defendant's ability to pay. . . . When, as here, the defendant's challenge on direct appeal is based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial, reviewing courts have declined to find forfeiture." (Accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 662; *People v. Johnson* (2019) 35 Cal.App.5th 134, 138; contra, *People v. Ramirez* (2019) 40 Cal.App.5th 305, 312 [defendant forfeited challenge by not objecting to the assessments and restitution fine at sentencing]; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [same]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154 [same].)

4.  *The Sentence Imposed for Misdemeanor Hit-and-run Driving Must Be Corrected*

Vehicle Code section 20002, subdivision (a), requires a driver involved in an accident causing property damage to immediately stop his or her vehicle and give the other driver his or her contact information.  Failure to do so is a misdemeanor and "shall be punished by imprisonment in the county jail not exceeding six months."  (Veh. Code, § 20002, subd. (c).)  Despite the six-month maximum penalty, the trial court imposed a sentence of one year for the hit-and-run conviction, to be served concurrently with the penalty imposed for driving under the influence causing injury.  The imposition of the one-year sentence for hit-and-run driving was improper and resulted in an unauthorized sentence.  (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1044-1045 [appellate court has obligation to correct unauthorized sentence whenever the error comes to its attention, whether or not the error was raised on appeal]; see generally *People v. Scott* (1994) 9 Cal.4th 331, 354 [a sentence is "unauthorized" when it "could not lawfully be imposed under any circumstance in the particular case"].)  We modify Perez's sentence to reflect a six-month concurrent sentence for violation of Vehicle Code section 20002, subdivision (a).

5.  *Perez Is Entitled to 312 Days of Actual Custody Credit*

A defendant is entitled to credit for all days spent in custody from the date of arrest to the date of sentencing.  (§ 2900.5.)  Perez contends, and the Attorney General concedes, the trial court incorrectly awarded Perez 311 days of actual custody credit, plus 46 days of conduct credit; but Perez was

21

entitled to 312 days of actual custody credit.[7] Accordingly, the abstract of judgment must be modified to reflect 312 days of actual custody credit and total presentence custody credit of 358 days. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 [incorrect calculation of legally mandated custody credit is an unauthorized sentence that may be corrected at any time].)

## DISPOSITION

The convictions are affirmed. The judgment is modified to reflect a sentence of six months for the misdemeanor hit-and-run conviction. The matter is remanded to give Perez the opportunity to request a hearing on his ability to pay the fine and assessments imposed by the trial court. The trial court is directed to prepare an amended abstract of judgment to reflect the modification of the hit-and-run sentence and the correction of Perez's custody credits and to forward it to the Department of Corrections and Rehabilitation.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

---

[7] The one-day increase in actual custody credit does not affect the number of days of conduct credit Perez earned.